**18 PALMER AVENUE, Inc., v. PORTER.**

**No. 326.**

United States Emergency Court of Appeals.

Heard at New York, Oct. 2, 1946.

Decided Oct. 22, 1946.

596

Walter E. Kelley, of Branxville, N. Y. (Joshua M. Fiero, Jr., of Branxville, N. Y., on the brief), for complainant.

Carl A. Auerbach, Associate Gen. Counsel, of Washington, D. C. (Richard H. Field, Gen. Counsel, Harry H. Schneider, Chief, Court Review Rent Branch, Charles P. Liff and Milton H. Shapiro, Attys., OPA, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

Complainant, landlord of property in Westchester County, New York, containing eight housing apartments, filed a protest with the Administrator attacking the regulation of October 26, 1944, extending rent control to Westchester County and fixing as the maximum rent date, August 1, 1944, and, as the effective date of control, November 1, 1944, contending that the regulation was arbitrary and capricious in that no increase or threatened increase of rentals warranted extension of rent control to the community

and that the maximum rents fixed had not been based upon the "sound judgment" of the Administrator but had been established in positive contravention of existing facts. Complainant also insisted that the Administrator had failed to comply with the procedural requirements of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq.

The Administrator denied complainant's request for an oral hearing but gave permission to complainant to supply such relevant evidence as it desired to submit within 30 days from January 9, 1945. Though, at complainant's request, this time was later extended to March 1, 1945 and still later to April 1, 1945, complainant offered no further evidence.

The Administrator included in his record his statement of economic data and other facts relating to the Westchester area officially noticed by him, including population of the county and its principal municipalities, labor supply and industrial characteristics of manufactures in the county, amount of war contracts awarded, army establishments created, employment trends, housing supply and construction, vacancies, rent trends and recommendations of local authorities.

This record reflected, in addition to other facts, the following: Westchester County has a population of 573,558. In 1939 the value of its manufactured products aggregated $186,000,000. The annual per capita value of war production in the county rose from $25.06 in 1941 to $783.93 in September and to $819.30 in December, 1944. War supply and facility contract awards between June, 1941 and December, 1944, totalled $508,728,000. Army establishments between June, 1940 and February, 1945, cost $3,631,-000. The average employment in 24 selected firms in war industries in 1943, was 29,119 and in 1944, 33,095. Of 161,213 dwelling units in 1940, 98,197 were occupied by tenants. Building permits decreased rapidly; thus, in 1938, in four of the principal municipalities, 1625 permits were issued; in 1941, in the same cities, 666; in 1942, 79; and in 1943, none. Vacancies in 1940 and 1941 amounting to 19.85% decreased to practically nothing at the end of 1944. During 1944 the Administrator re-

ceived resolutions or statements reciting conditions necessitating, in the opinion of their authors, the extension of rent control to the area, from the councils of Yonkers and Mount Vernon, the mayors of Harrison, New Rochelle, Rye, White Plains and Yonkers, the Personnel Association of the Stamford and Greenwich area, composed of officials and personnel directors representing 35 industrial companies in that area, the White Plains Urban League, the White Plains Committee for a Housing Authority, the White Plains United Spanish War Veterans, the Westchester branch of the Chamber of Commerce of the United States, and the Brotherhood of Painters, Decorators and Paperhangers. By October, 1944, the area's rent index had risen 2.1% above that of March 1, 1942.

The Administrator, in September, 1944, had held that the factual situation existing in August was not sufficient to justify extension of rent control to Westchester County, and this, says complainant, constituted proof that he was not justified in making the extension on October 26. The record discloses, however, that the amount of war contract awards had continued to increase, with upward surges in employment; that, as a natural concomitant of such activities, a housing shortage had occurred in late 1944; that in the period between August 1, 1944 and the effective date of the regulation of November 1, 1944, rents had advanced sharply as compared with the increase in the 29 months from March 1, 1942, to August 1, 1944, and that, during the two-months period from August 1 to October 1, 10 out of every 100 rented houses reflected increased rents, whereas only 15 out of every 100 had increases during the entire previous 29 months period. These figures reflect an average increase of five per cent for each month after the maximum rent date as compared to about one-half of one per cent per month for the two years period preceding August 1, 1944. It seems apparent, that, irrespective of the rental status in August and whether the Administrator rightfully concluded that extension of rent control was inadvisable at that time, with all of which we are not directly concerned here, the situation in October was such that it was reasonably necessary that the Administrator take action.

The Board of Review, confirmed by the Administrator, held that complainant's plea of arbitrary action had not been sustained and the protest was denied. Thereupon complainant came to this court attacking the regulation upon the two grounds relied upon in the protest proceedings.

Upon the merits, as to whether there is substantial evidence to sustain the Administrator's regulation or whether he acted capriciously, we have set forth some of the facts appearing in the record. They are in no wise controverted and can only be regarded as sufficient evidence to justify the Administrator's action.

The fact that the increases in rents were not tremendous is not decisive; we have previously held that the Administrator need not delay action until increases have become extensive and that, when inflationary or disruptive pressures begin to appear in a defense-area, any increase in rents, however small "may be inflationary both in origin and effect and may, therefore, fairly be described as abnormal within the meaning of the act." Philadelphia Coke Company v. Bowles, Em.App.1943, 139 F.2d 349, 352, 353; Spaeth v. Brown, Em.App.1943, 137 F.2d 669; Madison Park Corporation v. Bowles, Em.App.1943, 140 F.2d 316. Under the same decisions, slight increases of rents, when accompanied by other significant economic factors resulting in inflationary pressures, are sufficient to justify the Administrator's exercise of authority in extending control. When war contracts increase greatly, when military local expenditures substantially increase, when the number of employed laborers increases, when housing vacancies are taken up and rents begin to rise, the Administrator, considering the facts and the demands of local authorities that rent regulation be established, is completely justified in extending the statutory relief.

There remains the procedural question raised by complainant. Section 2(b) of the Price Control Act reads in part as follows: "Whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of this

Act, he shall issue a declaration setting forth the necessity for, and recommendations with reference to, the stabilization or reduction of rents for any defense-area housing accommodations within a particular defense-rental area. If within sixty days after the issuance of any such recommendations rents for any such accommodations within such defense-rental area have not in the judgment of the Administrator been stabilized or reduced by State or local regulation, or otherwise, in accordance with the recommendations, the Administrator may by regulation or order establish such maximum rent or maximum rents for such accommodations as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. So far as practicable, in establishing any maximum rent for any defense-area housing accommodations, the Administrator shall ascertain and give due consideration to the rents prevailing for such accommodations, or comparable accommodations, on or about April 1, 1941 (or if, prior or subsequent to April 1, 1941, defense activities shall have resulted or threatened to result in increases in rents for housing accommodations in such area inconsistent with the purposes of this Act, then on or about a date (not earlier than April 1, 1940), which in the judgment of the Administrator, does not reflect such increases), and he shall make adjustments for such relevant factors as he may determine and deem to be of general applicability in respect of such accommodations, including increases or decreases in property taxes and other costs within such defense-rental area. In designating defense-rental areas, in prescribing regulations and orders establishing maximum rents for such accommodations, and in selecting persons to administer such regulations and orders, the Administrator shall, to such extent as he determines to be practicable, consider any recommendations which may be made by State and local officials concerned with housing or rental conditions in any defense-rental area."

Under this section the Administrator, on April 28, 1942, designated Westchester County a defense-rental area and recommended stabilization of rents at levels prevailing on March 1, 1942. Under the Act, the Administrator then had authority to establish maximum rents, if, within 60 days after the issuance of his recommendations, rents had not, in his judgment, been stabilized. While there is some question as to whether rents were stabilized through the efforts of local authorities, we shall assume, as the Administrator has admitted, for the purpose of disposition of this case, that within 60 days, rents in this area had become stabilized. The Administrator made no attempt to extend control to Westchester County until October 26, 1944, at which time he issued Amendment No. 38 to the Rent Regulation for Housing which brought the Westchester defense-rental area under control and established as maximum rents those existing on August 1, 1944. This lapse of time between the date of the original designation, April 28, 1942, and the date of the regulation, October 26, 1944, says the complainant, was fatal to any authoritative action establishing maximum rents, in the absence of a subsequent designation. It is complainant's position that, if within 60 days of a designation, rents become stabilized, the Administrator may not thereafter fix maximum rents without a new designation, even though the stability effected does not continue but ceases to exist.

The language of the Act, at first glance, may seem somewhat persuasive of the correctness of the construction urged by complainant but, after careful consideration, it is our concerted judgment that proper interpretation of the act, if we preserve the intent of Congress, is opposed to the suggested construction. We think Congress intended that the Administrator should have no authority to fix rents in a defense-area so long as local authorities succeed in maintaining stabilization and in successfully combating inflationary pressures. But, though local authorities are given the first opportunity to bring about stabilization and even though they succeed temporarily, if that status does not continue, then it becomes the duty of the Administrator, having already made his designation, if the facts are such as to justify extension of control, so to act as to defeat the threatened disruptive tendencies. Maintenance of stability may continue 60 days, three months, six months, or longer, but when there is an

impact of constantly increasing war contracts and of increasing numbers of incoming laborers to take of war work, and vacancies in housing accommodations disappear and rents increase even though slightly, at first, but later, relatively abruptly, it seems clear that inflationary forces are at work callng upon the Administrator to act in pursuance of his original designation. When city councils, mayors and other civic bodies demand action, thereby indicating that they are unable to maintain stabilization, we think it was not Congress' intention that the Administrator must, before he takes effective action, again designate the area as a defense-area and again allow the local authorities 60 days in which to re-establish stability. Imposition of such a useless requirement upon the Administrator is, in effect, to require of him procedural action handicapping him in his administrative duty to combat inflation. When the various local authorities said to the Administrator, in effect, "the stabilization we first achieved has got out of hand; we want you to take action," he had the right and was under statutory obligation to act.

We conclude, therefore, that the Administrator complied with all the conditions precedent of a procedural character required of him and that, on the merits, the evidence was such that we cannot declare the regulation arbitrary or capricious.

Judgment will enter dismissing the complaint.